## A08A2080. DAVIS v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY.
### (674 SE2d 627)

BERNES, Judge.

Appellant Thomas Davis filed this breach of contract action against his former employer, Metropolitan Atlanta Rapid Transit Authority d/b/a MARTA, alleging that the corporation had improperly reduced and terminated his long-term disability benefits. MARTA filed a motion for summary judgment, asserting that its actions were authorized under the Mass Transit Integrated Risk Master Policy issued by ACE Indemnity Insurance Company, which contained the complete terms and limitations governing the payment of benefits. Davis filed a motion in limine and a motion for partial summary judgment, alleging that the additional terms set forth in the Master Policy were irrelevant to his claim and that the payment of benefits was instead controlled by MARTA's open enrollment booklet, which failed to provide the limitations upon which MARTA relied. The trial court concluded that the open enrollment booklet did not set forth the complete terms governing the benefits, but rather provided adequate notice that complete information had to be obtained from another source, i.e., the Schedule of Benefits under the Master Policy, the terms of which authorized MARTA's actions. Based upon these conclusions, the trial court denied Davis's motions and granted MARTA's motion concerning this issue. Davis appeals the trial court's rulings. For the reasons that follow, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

In this case, the undisputed facts and evidence established that Davis started working for MARTA in 1998. On June 21, 2002, Davis became disabled due to a mental illness and began receiving short-term disability benefits. After his entitlement to short-term disability benefits was exhausted, Davis applied for and was approved to receive long-term disability benefits, effective September 21, 2002.

MARTA provided eligible employees with basic long-term disability coverage equal to 60% of the employee's base pay up to a maximum of $7,000 per month, payable if the employee became disabled due to an occupational or nonoccupational injury, illness, or condition. MARTA's open enrollment booklet "[c]ontain[ed] [h]ighlights of [b]enefit [p]lans" and provided a "brief description[ ]" of the basic long-term disability benefits, with instructions that em-

ployees consult the Summary Plan Description "[f]or complete details about [the] benefits." The open enrollment booklet further advised that additional information could be viewed by accessing the Benefit system, and that the Benefits Office could be contacted to address any questions.

MARTA's long-term disability benefits to employees were provided through a combination of self-funding and insurance under the Master Policy issued by ACE Indemnity Insurance Company. The Master Policy contained a Disability Coverage Part and Schedule of Benefits that provided complete details, including definitions, limitations, exclusions, and instructions governing the payment of the benefits. The Schedule of Benefits contained a limitation on the payment of long-term disability benefits for certain conditions, and pertinently specified that "[o]nce 24 monthly [d]isability [b]enefits have been paid, no further benefits will be payable for . . . [m]ental [i]llness." Moreover, the Schedule of Benefits authorized MARTA to "reduce the [d]isability [b]enefits by the amount of . . . [o]ther [i]ncome [b]enefits . . . includ[ing] . . . any Social Security disability or retirement benefits" that the employee was entitled to receive and further authorized the recovery of any overpayment of benefits.

MARTA's claims administrator had several communications with Davis regarding the long-term disability benefits, and had informed him of the 24-month limitation and offset that applied to his claim. The Schedule of Benefits was kept at MARTA's Benefits Office and was available to employees upon their request. When Davis requested a copy of "the MARTA policy," the claims administrator sent him a copy of the Master Policy's Schedule of Benefits.

Beginning in January 2004, MARTA reduced Davis's long-term disability benefits by the amount of social security benefits he was receiving. MARTA also claimed that it had mistakenly overpaid Davis's benefits, and made monthly deductions from Davis's benefits checks until the overpayment was recovered. Finally, in September 2004, MARTA terminated its disability payments to Davis.

Davis filed suit against MARTA, alleging that it had breached its agreement under the open enrollment booklet to provide long-term disability benefits. Davis sought the payment of additional benefits and the return of the amounts that had previously been withheld as reductions and overpayments. The trial court granted summary judgment in favor of MARTA, ruling that Davis had adequate notice that the open enrollment booklet did not set forth the complete terms of MARTA's long-term disability benefits and that Davis had been provided with the Master Policy's Schedule of Benefits containing the detailed terms that authorized MARTA's actions. Davis appeals from this ruling, contending that his claim for long-term disability benefits was exclusively governed by the general terms in

MARTA's open enrollment booklet. We disagree and conclude that the trial court's ruling was correct.

As stated in the trial court's order, this issue is controlled by the Supreme Court of Georgia's decision in *Adams v. Hercules, Inc.*, 245 Ga. 464 (265 SE2d 781) (1980). In *Adams*, an employee filed suit to recover benefits allegedly owed under the company's voluntary supplemental payment plan. Although the company's master agreement contained a provision limiting the payment of the benefits, no such limitation was mentioned in the company's handbook delivered to newly hired employees. Based upon these circumstances, the Court was called upon to determine whether, as a matter of law, the company was bound by the incomplete information in its handbook, or whether the handbook provided adequate notice that the employee should consult the master agreement as another source to determine the full details for the available benefits. Id. at 464-465. See also *Hercules, Inc. v. Adams*, 150 Ga. App. 223, 224 (1) (257 SE2d 289) (1979), rev'd at 245 Ga. 464. The evidence showed that in addition to generally describing the employee benefits, the handbook contained statements explaining that the benefit plans were presented "in a very brief form" and instructed employees to "obtain the full details of all Benefit Plans from your Foreman, Supervisor or the Personnel Department." (Emphasis omitted.) *Adams*, 245 Ga. at 465. The Court ruled that "[t]his language, even if standing alone, would put the ordinarily prudent person on notice that the complete details were absent from this presentation, and that at least one other source should be consulted for full details." (Punctuation omitted.) Id. As such, the employee was not entitled to rely exclusively upon the handbook; rather, the employee had adequate notice that he was required to make further inquiry into the full details of the benefit plans provided in the master agreement, as the handbook had instructed him to do. Id.

As in *Adams*, the open enrollment booklet relied upon by Davis in this case expressly provides that it merely "[c]ontain[ed] [h]ighlights of [b]enefit [p]lans" and provided a "brief description[ ]" of the basic long-term disability benefits. The open enrollment booklet further instructed employees to consult the Summary Plan Description (SPD) to obtain "complete details about [the] benefits," and advised that additional information could be viewed by accessing the Benefit system or by contacting the Benefits Office to ask questions. The telephone numbers for the Benefits Office were also provided. Significantly, Davis had several communications with MARTA's claims administrator, who had informed him of the additional details and limitations contained in the Master Policy's Schedule of Benefits that governed his claim. The claims administrator also sent Davis a copy of the Schedule of Benefits, pursuant to his request. Although

358

the details of the long-term disability benefits coverage was provided in the Schedule of Benefits, rather than an SPD, the open enrollment booklet nonetheless provided Davis with adequate notice that its benefit descriptions were incomplete and that the full details concerning the benefits had to be obtained from other sources. See *Adams*, 245 Ga. at 465; *Amoco Fabrics &c. Co. v. Ray*, 235 Ga. App. 821 (510 SE2d 591) (1998); *Johnson v. Fulton County*, 235 Ga. App. 277, 277-279 (1) (a) (509 SE2d 355) (1998). Compare *Rider v. Westinghouse Elec. Corp.*, 155 Ga. App. 61, 62-64 (2) (270 SE2d 288) (1980) (concluding that there was no specific notice that the benefits statement was merely a "brief" statement of eligibility, the specifics of which were based upon the insurance group policy, or that the claimant had a right to inspect that policy). Under these circumstances, Davis's purported reliance upon the incomplete descriptions in the open enrollment booklet was misplaced.

The evidence also established, without question, that the Master Policy governed and authorized MARTA's reduction and termination of Davis's benefits. We find no merit in Davis's argument that the Master Policy only reimbursed MARTA for its benefits to employees, and thus, was only for MARTA's benefit and was not a contract to provide long-term disability benefits to the employees. The evidence established that MARTA provided the long-term disability benefits to its employees through a combination of self-funding and insurance under the Master Policy. MARTA's Director of Risk Management and Employee Benefits explained that MARTA paid its employees benefits pursuant to this insurance program, which required MARTA to strictly administer benefits coverage in accordance with the terms of the insurance policies. Under this insurance program, the provisions of the Master Policy controlled the payment of long-term disability benefits claims. And, Davis implicitly accepted the long-term disability coverage under the Master Plan by remaining in employment and filing a claim for the benefits under its terms. See *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 596-597 (2) (417 SE2d 163) (1992) (ruling that "[i]t is the accepted law of this state that an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan") (citation and punctuation omitted). See also *Ellison v. DeKalb County*, 236 Ga. App. 185, 186 (1) (511 SE2d 284) (1999) (discussing employee's implied acceptance of additional compensation plan when he remains in employment).

The trial court's decision granting summary judgment in favor of MARTA, therefore, was proper. See *Adams*, 245 Ga. at 465; *Amoco*

*Fabrics &c. Co.*, 235 Ga. App. at 823-825; *Johnson*, 235 Ga. App. at 277-279 (1) (a).

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED MARCH 2, 2009.

*Kenneth I. M. Behrman*, for appellant.
*LaShanda R. Dawkins*, for appellee.